The CHILDREN'S HOSPITAL OF BUFFALO, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Health and Human Services,[1] and The Department of Health and Human Services, Defendant.

No. 97-CV-942S(F).

United States District Court, W.D. New York.

March 29, 2000.

1. Kenneth S. Apfel was appointed Commissioner of Social Security, effective September 29, 1997, and is substituted as the defendant in this action. No further action is required to continue this suit as, pursuant to 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."

Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Robert J. Lane, Jr., Kevin D. Szczepanski, of counsel, Buffalo, NY, for plaintiff.

Denise D. O'Donnell, United States Attorney, Jane B. Wolfe, Assistant United States Attorney, of counsel, Buffalo, NY, for defendants.

## ORDER

SKRETNY, District Judge.

1. On February 13, 1998, Hon. Richard J. Arcara, United States District Judge, referred this case, including jurisdiction to hear and report upon dispositive motions, to Hon. Leslie G. Foschio, United States Magistrate Judge.

2. On July 10, 1998, Defendant filed a motion for judgment on the pleadings.

3. On April 7, 1999, Magistrate Judge Foschio issued a Report and Recommen-

dation concluding that defendants' motion should be granted.

4. On April 20, 1999, Magistrate Judge Foschio, upon agreement by the parties, deemed the April 7, 1999 Report and Recommendation as withdrawn and allowed the parties to submit additional pleadings.

5. On May 21, 1999, Plaintiff filed a cross-motion for summary judgment.

6. On July 6, 1999, Magistrate Judge Foschio issued a Report and Recommendation concluding that defendants' motion for judgment on the pleadings should be granted; that Plaintiff's cross-motion for summary judgment should be denied; and that this case should be dismissed.

7. On July 20, 1999, Plaintiff filed an objection to Magistrate Judge Foschio's July 6, 1999 Report and Recommendation.

8. On September 21, 1999, Judge Arcara issued an Order transferring this case to this Court.

9. On February 7, 2000, this Court heard oral argument on Plaintiff's objections and directed the parties to return on March 7, 2000 for decision.

10. On March 7, 2000, this Court issued a statement from the bench in which it, for the reasons stated on the record, denied Plaintiff's objections, accepted Magistrate Judge Foschio's July 6, 1999 Report and Recommendation, granted Defendant's motion for motion for judgment on the pleadings, and denied Plaintiff's cross-motion for summary judgment.

IT HEREBY IS ORDERED, that this Court ACCEPTS, for the reasons stated on the record, Magistrate Judge Foschio's July 6, 1999 Report and Recommendation;

FURTHER, that Defendant's motion for judgment on the pleadings is GRANTED;

FURTHER, that Plaintiff's cross-motion for summary judgment is DENIED.

FURTHER, the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

**REPORT and RECOMMENDATION**

FOSCHIO, United States Magistrate Judge.

***JURISDICTION***

This matter was referred to the undersigned on February 13, 1998 by the Hon. Richard J. Arcara for report and recommendation. It is before the court on Defendants' motion for judgment on the pleadings filed July 10, 1998 (Docket Item No. 8), and Plaintiff's cross-motion for summary judgment filed May 21, 1999 (Docket Item No. 13).

***BACKGROUND***

Plaintiff, The Children's Hospital of Buffalo, commenced this action pursuant to 42 U.S.C. §§ 405(g), 1395rr(g)(3) and 405.1877(a), and 5 U.SC. §§ 702 and 704, seeking judicial review of a decision by the Health Care Finance Administration's Administrator which rejected Plaintiff's request for an exception rate for Medicare reimbursement as untimely. Defendants filed an answer to the Complaint on February 10, 1998.

By order dated March 11, 1998, Defendants were given until July 10, 1998 to move for judgment on the pleadings and Plaintiff was to respond to such motion within two months of such filing. On July 10, 1998 Defendants filed a motion for judgment on the pleadings and a Memorandum of Law in support.

Pursuant to an order dated April 20, 1999, Plaintiff filed on May 21, 1999 a cross-motion for summary judgment, a statement of undisputed facts, and a memorandum of law. On June 9, 1999, Defendants filed a reply memorandum of law in further support of its motion for judgment on the pleadings. Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for judgment on the pleadings should be GRANTED and Plaintiff's cross-motion for summary judgment should be DENIED.

## *FACTS*[2]

The Health Care Finance Administration ("HCFA") is a division of the Department of Health and Human Services ("HHS"). Pursuant to Title XVIII of the Social Security Act ("the Act"), 42 U.S.C. §§ 1395–1395ccc, Medicare reimbursement is available for Medicare beneficiaries who have been diagnosed with End Stage Renal Disease[3] ("ESRD"). The Secretary of Health and Human Services has delegated responsibility for administration of the Medicare program to the Administrator of the HCFA by entering into contracts with private health insurance carriers ("carriers") to administer and pay claims for health care services and treatment rendered to Medicare beneficiaries. 42 C.F.R. § 401.101(a). Such a carrier is referred to as an "intermediary." *Id.*

Facilities which provide ESRD medical services and treatment ("Providers") are reimbursed through the Medicare Part A program[4] in accordance with 42 U.S.C. § 1395rr and 45 C.F.R. Part 405, Subpart U. A network of intermediaries is responsible for administering the Medicare Part A program on a nationwide basis. Blue Shield of Western New York, Inc., is the designated intermediary charged with administering the Medicare Part A program in Western New York, which includes all of New York State except for New York City. Thus, it is the Intermediary responsible for Children's Hospital's ESRD Medicare reimbursements.

Reimbursement under the Medicare program is generally at a "composite rate" under 42 U.S.C. § 1395rr(b)(7), which also provides for an "exception" to the composite rate for an ESRD facility with "unusual circumstances" including the provision of ESRD services and treatment to pediatric patients who require a significantly higher staff-to-patient ratio than typical adult patients. Even though previously approved for such an exception, each time HCFA issues a new composite rate, an ESRD provider is required to request a new exception.

The Children's Hospital of Buffalo ("Children's Hospital"), previously applied for and received an exception to the ESRD composite rate from December 1, 1989 through February 29, 1991 on the basis that it renders ESRD services and treatment to pediatric patients. Complaint, ¶ 12. In February 1991, HCFA advised the Intermediaries that a new ESRD composite rate became effective as of January 1, 1991. Intermediary Program Memorandum ("IPM") No. A–91–2. (R. 269).[5] By memorandum dated February 22, 1991, Children's Hospital was advised by its Intermediary that the composite rate previously in effect as of September 30, 1990 had changed effective for dialysis treatments furnished on or after January 1, 1991, referencing a rate notification dated January 17, 1991. Memorandum dated February 22, 1991, by Peter J. Wawak, Director of Medicare A Reimbursement to Hospital Based ESRD Facilities, Exhibit A to Complaint ("Wawak Memorandum"). Children's Hospital was further advised

> A new exception cycle commences on March 1, 1991. Renal facilities have 180 days *from* March 1, 1991 to file a valid exception request. *No composite rate exception request received by us after August 27, 1991 will be accepted.* Requests for reconsideration must also be received by August 27, 1991. After that

2. The fact statement is taken from the pleadings and motion papers filed in this action

3. End Stage Renal Disease is defined as "that stage of renal [kidney] impairment that appears irreversible and permanent, and requires a regular course of dialysis or kidney transplantation to maintain life." 42 C.F.R. §§ 405.2102, 406.13(b).

4. "Medicare Part A" provides reimbursement for hospital medical services. "Medicare Part B" provides reimbursement for non-hospital medical services, including physician services.

5. "R" references are to the Administrative Record filed as the factual basis for this action.

date the Health Care Financing Administration will not review any exception determination.

Wawak Memorandum (Underlining in original) (Italics added).

On August 27, 1991, Children's Hospital mailed an exception request to the Intermediary by an overnight mail carrier. The Intermediary, having received that request on August 28, 1991, returned it to Children's Hospital on August 29, 1991, accompanied by a letter explaining that the exception request was denied as untimely. By letter dated September 4, 1991, Children's Hospital advised the Intermediary that the 180-day time period for filing exception requests was improperly calculated and called the Intermediary's attention to a discrepancy regarding the description of 180-day time period in two earlier communications from the Intermediary.[6] Children's Hospital also protested the denial of its exception request on the basis that the Medicare Provider Reimbursement Manual ("PRM") required only that an ESRD composite rate exception request be *filed* within 180 days which it maintains is defined under the relevant Medicare regulation as *mailed.* As the Intermediary did not withdraw its denial, on February 14, 1992, Children's Hospital appealed the decision to the Provider Reimbursement Review Board ("PRRB") pursuant to 42 C.F.R. Part 405, Subpart R.

A hearing was held on November 14, 1996 at the HCFA headquarters in Baltimore, Maryland. In a decision issued August 4, 1997, the PRRB found that the Intermediary had improperly rejected Children's Hospital exceptions request as untimely and remanded the exception request to the Intermediary and HCFA for review on its merits. On August 22, 1997, the HCFA Administrator advised Children's Hospital and the Intermediary of its intention to review the PRRB's decision.[7] Upon review, the HCFA Administrator found that Children's Hospital did not timely file its request for an ESRD composite rate exception and reversed the PRRB's decision on October 6, 1997. This lawsuit followed.

## *DISCUSSION*

Defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Upon motion for judgment on the pleadings under Rule 12(c), the court follows the same standards applicable to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). *Irish Lesbian, Gay Organization v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). In determining whether dismissal is proper under Rule 12(b)(6), the court must accept all allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *Shechter v. Comptroller of the City of New York,* 79 F.3d 265, 270 (2d Cir.1996). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard, supra,* at 150 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

6. According to Children's Hospital, in the Wawak Memorandum dated February 22, 1991, ESRD treatment providers were advised that a new 180-day exception cycle would open on March 1, 1991 and close on August 27, 1991. However, in a subsequent Memorandum by Wawak dated July 30, 1991, Wawak calculated a separate 180-day period regarding PRRB appeals and which began on February 28, 1991 as also concluding on August 27, 1991. Letter dated September 4, 1991 by Thomas M. Honan, Executive Vice President, Finance, Children's Hospital, Exhibit F to Complaint.

7. Pursuant to 42 U.S.C. § 1395oo(f)(A), The Secretary is authorized to reverse, affirm or modify a decision by the PRRB. The HCFA Administrator, pursuant to its delegated responsibility to administer the Medicare program on behalf of the Secretary, 42 C.F.R. § 401.101(a), was thus authorized to reverse the PRRB's decision.

Matters of which judicial notice may be taken are appropriately considered in ruling on a motion to dismiss under Rule 12(b)(6). *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). As the standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion under Rule 12(b)(6), the court may also consider matters as to which judicial notice may be taken on a Rule 12(c) motion. *Diaz v. Coughlin,* 909 F.Supp. 146, 147–48 (S.D.N.Y.1995).

Children's Hospital has cross-moved for summary judgment pursuant to Fed. R.Civ.P. 56. Summary judgment of a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. 2548.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505.

The facts of this case are not materially disputed and thus do not bar summary judgment. Rather, both motions are predicated on Children's Hospital request for judicial review of the Secretary's decision that its application for an exception to the composite payment rate for ESRD services was untimely. Children's Hospital argues such decision is inconsistent with and in violation of 42 U.S.C. § 1395rr, 42 C.F.R. § 1801(a) and the Medicare Provider Reimbursement Manual ("PRM") (HCFA Pub. 15–1), § 2720.3. (R. 2–8). Specifically, Children's Hospital contends that it timely submitted its exception request by mailing it on August 27, 1991 by overnight mail, and that the Secretary's decision not to accept the request is therefore arbitrary, capricious, an abuse of discretion, not in accordance with law, or not supported by substantial evidence. Complaint, ¶¶ 17, 32–33; Children's Hospital's Memorandum of Law in Opposition to Motion for Judgment on the Pleadings and in Support of its Cross-motion for Summary Judgment, filed May 21, 1999 (Docket Item No. 14) ("Plaintiff's Memorandum of Law") at 5–7, 18. Children's Hospital also asserts that the 180–day period in which to request an exception was arbitrary and capricious as it was incorrectly calculated by counting March 1, 1991 rather than March 2, 1991, as the first day of such period, resulting in expiration of the 180–day period on August 27, 1991, rather than August 28, 1991. Complaint, ¶ 25; Plaintiff's Memorandum of Law at 11–13; 41–42. Defendants maintain that the Secretary's decision was consistent with prior determinations and regulations and, accordingly, it is entitled to judgment on the pleadings. Memorandum of Law in Support of the Secretary's Motion for Judgment on the Pleadings filed July 10, 1998 (Docket Item No. 9) ("Defendants' Memorandum of Law") at 2.

The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("the APA"), which is incorporated by the Social Security Act, 42 U.S.C. § 1395oo(f)(1), "com-

mands reviewing courts to 'hold unlawful and set aside' agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting 5 U.S.C. § 706(2)(A)). An agency decision "may be deemed arbitrary, capricious or an abuse of discretion 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency experience.'" *Henley v. Food and Drug Administration*, 77 F.3d 616, 620 (2d Cir.1996) (quoting *Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Agency decisions which are unsupported by substantial evidence are arbitrary and capricious. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995). "Substantial evidence requires evaluation of the entire record, including opposing evidence, and requires a decision to be supported by less that a preponderance but more than a scintilla of evidence. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sprint Spectrum, L.P., d/b/a Sprint PCS v. Willoth*, 1999 WL 437081, *2 (2d Cir.1999) (internal citation and quotation omitted). An agency decision is not contrary to law so long as it is a rational conclusion based on the agency's expertise. *See Henley, supra*, at 621 (holding Food and Drug Administration's decision to delete from oral contraceptives label warning of possible causal relationship between use of drug and cancer as such specific warning was not warranted in light of current scientific studies).

An agency's interpretation of its own regulations is generally given controlling weight provided it is not plainly erroneous or inconsistent with relevant statutes. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Federal courts are thus required to "give substantial deference to an agency's interpretation of its own regulations," unless an alternative reading is compelled by the plain language of, or some other indication of the Secretary's intent in promulgating, the regulations. *Thomas Jefferson University, supra*, at 512, 114 S.Ct. 2381 (citing cases). Such "broad deference" is especially warranted in actions where the subject regulations concern a "highly technical" and "complex" regulatory program. *Thomas Jefferson University, supra.* (considering Medicare reimbursement regulations as "highly technical" and "complex").

Additionally, interpretive rules are " 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (quoting Attorney General's Manual on the Administrative Procedure Act at 30, n. 3 (1947)). "Interpretive rules do not require notice and comment, although, ... they also do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Chrysler Corp., supra.* The interpretive rules contained in the PRM are "prototypical" interpretive rules issued by the Social Security Administration to advise the public of its construction of the statutes and rules it administers. *See Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995). Only if an interpretive rule adopts a new position inconsistent with the Secretary's previous regulations is APA rulemaking procedure required before such interpretive rule is given effect. *Id.*

The Secretary of Health and Human Services is authorized to determine what items or services Medicare payments will cover in accordance with prescribed regu-

lations, 42 U.S.C. § 1395ff(a), and may prescribe such regulations necessary for the administration of the Medicare insurance program, as well as other rules, requirements or policy statements. 42 U.S.C. § 1395hh(a)(1) & (2). The Secretary is also granted authority to promulgate rules as well as instruction manuals, interpretive rules, policy statements and guidelines. *Guernsey Memorial Hospital, supra,* at 99, 115 S.Ct. 1232.

Pursuant to 42 U.S.C. § 1395rr(b)(2) & (7), the Secretary has established a procedure for prospective reimbursement for costs of dialysis services rendered to Medicare beneficiaries with ESRD, specifically, 42 C.F.R. Part 413, Subpart H. Essentially, any facility which furnishes dialysis treatment to Medicare beneficiaries with ESRD is entitled to reimbursement for such services based on a prospectively determined "composite payment rate" determined by the HCFA for each dialysis treatment. 42 C.F.R. § 413.174(a). All Medicare-approved ESRD facilities must accept the prospective payment rates established by the HCFA as payment in full for covered outpatient maintenance dialysis, 42 C.F.R. § 413.172(b), unless it successfully requests an exception pursuant to 42 C.F.R. § 413.170. Requests for exceptions are required to be made within 180 days after either notification of a new prospective payment rate, or an extraordinary event with substantial cost effects. 42 C.F.R. § 413.170(f)(4).[8] An ESRD provider may request an exception to the composite payment reimbursement rate if its facility anticipates a disproportionately high single treatment cost based on five specifically enumerated circumstances including atypical service intensity to a patient mix such as one with a high ratio of pediatric patients who require significantly higher staff-to-patient ratio than typical adult patients. 42 C.F.R. § 413.170(g)(1)(ii).

Any ESRD provider who is dissatisfied with the Intermediary's determination with regard to a composite rate exception request may obtain a hearing before the PRRB with respect to such determination. 42 U.S.C. § 1395oo(a). The decision of the PRRB is final unless the Secretary, acting through the Administrator of the HCFA, within 60 days of that decision and upon his own motion, reverses, affirms or modifies the PRRB's decision. 42 U.S.C. § 1395oo(f) The Secretary's decision is subject to judicial review in federal court. 42 U.S.C. § 1395oo(f)(1).

In the instant case, the parties dispute whether Children's Hospital's request for an exception to the composite rate reimbursement rate was timely. As stated, HCFA notified the Intermediaries of the new ESRD composite rates effective January 1, 1991 through IPM No. A–91–2, issued in February 1992, which stated that

> A new exception cycle, as defined in 42 CFR 413.170(f), commences on March 1, 1991. Renal facilities have 180 days from March 1, 1991, to file a valid exception request. No composite rate exception request received by [the Intermediary] after August 27, 1991, will be considered timely. Requests for reconsideration *must also be received by August 27, 1991.* After that date, the Health Care Finance Administration will not review any exception determination.

IPM A–91–2 (Italics added).

On February 22, 1991, Children's Hospital was informed that a new composite rate for dialysis treatments went into effect on January 1, 1991, referencing a January 17, 1991 rate notification. Wawak Memorandum. Children's Hospital was also advised on January 17, 1991 that the 180–day "exception cycle" in which ESRD facilities may request an exception to the new composite rate would commence on March 1, 1991. *Id.* Further, the notice provided

8. Effective September 15, 1997, 42 C.F.R. § 413.170(f)(4) was substantially amended and redesignated as 42 C.F.R. § 413.180. 62 Fed.Reg. 43,657 (August 15, 1997). A copy of the earlier relevant version of § 413.170(f)(4) is in the record. (R. 258).

that to be considered both initial exception requests and requests for reconsideration were to be received by a facility's intermediary by August 27, 1991. *Id.*

In *Guernsey Memorial, supra,* the Supreme Court found that with regard to reimbursement calculation of defeasance losses, the Secretary's interpretation of her own regulations, as evidenced by relevant PRMs, was consistent with the Medicare statute. A regulation which required providers to maintain records sufficient to determine costs did not imply that such records were intended to be "conclusive of the entire reimbursement procedure." *Guernsey, supra,* at 93, 115 S.Ct. 1232. Instead, the reimbursement procedure was governed according to a section of the PRM which the Court stated was "a prototypical example of an interpretive rule" instructive of an agency's construction of the statutes and rules it administers. *Guernsey, supra,* at 99, 115 S.Ct. 1232.

Similarly, in this case, the court finds that 42 C.F.R. § 413.170(f)(4) is not "conclusive" of the "entire" ESRD treatment reimbursement composite rate exception process. *Guernsey Memorial, supra,* at 93, 115 S.Ct. 1232. Rather, the Secretary has over a substantial period of time issued interpretive rules and policy statements, the PRMs and IPMs, which provided specific guidelines regarding the Secretary's interpretation and application of 42 C.F.R. § 413.170(f)(4).

The guidelines by which a provider may request an exception to the composite payment reimbursement rate are set forth as interpretive rules in the PRM. According to the Secretary's interpretive rule as found in the PRM, whenever a new composite payment rate is issued, HCFA notifies the Intermediaries. PRM § 2704 (R. 263). It is the responsibility of the Intermediaries to notify each ESRD facility of the new composite payment rate in writing before the effective date of the such rate. *Id.* Published composite rates remain in effect until new payment rates are issued. *Id.* PRM § 2704 also requires that the publications by which an Intermediary notify its providers of the new payment rate must include "a date all exception requests must be received by an intermediary to meet the requirements of § 2720.3." PRM § 2703 states that a provider facility is required to request an exception

> —Within 180 days of the effective date of the new corporate payment rates (the intermediary sends a notice per § 2704[¶ 7598D]); or
>
> —Within 180 days after an extraordinary cost-increasing event. Failure by a facility to *submit* its exception request within 180 days will result in it being denied.

PRM § 2720.3 (emphasis added).

Children's Hospital's argument that its exception request was timely submitted hinges on its interpretation of the word "submit" as it appears in PRM § 2720.3 but which is not defined in the PRM. Plaintiff's Memorandum of Law at 5–6. According to Children's Hospital, as the PRM defines neither when an exception is considered as having been requested nor how to calculate the 180–day period, the "date of submission" is defined by the relevant regulation which it submits is 42 C.F.R. § 405.1801(a). Complaint, ¶ 15; Plaintiff's Memorandum of Law at 5. Defendants insist that no statute or regulation defines when an exception request is made and, as such, that determination is properly based on the Secretary's interpretation of the regulations as reflected in the interpretive rules contained in the PRM. Defendants' Memorandum of Law at 13.

Under 42 C.F.R. § 405.1801(a), both "date of filing" and "date of submission" as used in connection with 42 C.F.R. Ch. IV, Pt. 405, Subpt. R ("Subpart R"), entitled "Provider Reimbursement Determination and Appeals," are defined as "the day of mailing (as evidenced by the post-mark) or hand-delivery of materials, unless otherwise defined in this subpart." Children's

Hospital thus maintains that pursuant to PRM § 2720.3, by sending its exception request to the intermediary on August 27, 1991, via overnight mail, its request for an exception was "submitted" and thus timely made as of August 27, 1991. Complaint, ¶ 17; Plaintiff's Memorandum of Law at 6, 18.

Subpart R, however, pertains to Medicare reimbursement requests for services rendered by approved Medicare providers during designated reporting periods as well as appeals in cases where such reimbursement is denied. It contains no reference to applications for exception requests to the ESRD Medicare reimbursement program at issue here. Rather, applications for such exception requests are governed by 42 C.F.R. Ch. IV, Part 413, Subpart H, entitled "Payment for End Stage Renal Disease (ESRD) Services and Organ Procurement Costs." Specifically, 42 C.F.R. § 413.180 sets forth the procedures for requesting exceptions to Medicare payment rates for ESRD treatment providers and neither defines "date of submission" or "date of filing," nor indicates that the definitions provided under Subpart R apply. As nothing in the regulations indicates that the date of filing or submission as defined by 42 C.F.R. § 405.1801(a) covers exception requests applied for under 42 C.F.R. § 413.180, those definitions are irrelevant, and the Secretary's reliance on the PRM to determine the timeliness of Children's Hospital's exception request was permissible and did not result in a conclusion that was inconsistent with any relevant regulation. *Guernsey Memorial Hospital*, *supra*, at 99, 115 S.Ct. 1232.

Children's Hospital further fails to acknowledge PRM § 2704 which is also relevant to the issue at bar. According to PRM § 2704, "[t]he publication of new payment rates includes an effective date for these rates, *and a date all exception requests must be received by an intermediary* to meet the requirements of § 2720.3." PRM § 2704 (emphasis added) (R. 263). The internal references in PRM § 2704 and § 2720.3 to each other demonstrate that the Secretary intended those interpretive rules would be read in conjunction with one another. Significantly, when PRM § 2720.3 is read in conjunction with PRM § 2704, there is no ambiguity as to when the Secretary considers an exception request timely in accordance with 42 C.F.R. § 413.170(f)(4). Rather, such reading demonstrates that a timely request is made when "received" by the Intermediary.

Interpretive guidelines, as discussed, are entitled to substantial judicial deference. The argument advanced by Children's Hospital that the word "submit" as contained in PRM § 2720.3 should be interpreted in accordance with § 405.1801(a) to mean the date of mailing as evidenced by a post-mark, therefore fails. Indeed, the fact that Children's Hospital utilized an overnight mail carrier to send its exception request on August 27, 1991 indicates Children's Hospital realized that the intermediary's receipt of the request was germane to its timeliness. If Children's Hospital was correct that submission occurs upon mailing, such special alacrity was unnecessary.

Nor is there any merit to Children's Hospital's arguments that Defendants' calculation of the 180–day exception period beginning with March 1, 1991 rather than March 2, 1991 was arbitrary and capricious, or that by revising PRM § 2720.3 on August 23, 1991 to specifically require calculation of the 180–day exception period in that manner demonstrates that Defendants knew how to amend the policy and could have done so sooner. Complaint, ¶¶ 17–27; Plaintiff's Memorandum of Law at 7–9.

The parties do not dispute that the method for calculating the 180–day period within which to submit a request for an exception is not defined by statute, regulation, or policy. Further, Defendants similarly calculated the 180–day exception pe-

riod with regard to requests for composite rates for facilities offering ESRD treatment on at least two other occasions. R. 292 (requiring requests for composite rate exception be received by Intermediary between October 1, 1987 and March 28, 1988 [counting October 1, 1987 as first day in calculating 180 day period] ); R. 302 (requiring requests for composite rate exception be received by Intermediary between December 1, 1989 and May 29, 1990 [counting December 1, 1989 as the first day in calculating 180 day period] ).

The reversal of the PRRB's decision by the Administrator of the HCFA, was also consistent with the HCFA Administrator's prior administrative decision in *Pocatello Regional Medical Center v. Blue Cross and Blue Shield Association,* Admin. Dec. No. 96–D42, July 11, 1996. (R. 373–80). There, the HCFA Administrator, upon construing relevant regulations together with HCFA's policies as set forth in relevant PRMs and IPMs, determined that an ESRD treatment provider's exception request was untimely as it was not received by the Intermediary within the established 180–day period. R. 379. Significantly, the HCFA Administrator found that the PRMs and IPMs demonstrated that HCFA interpreted 42 C.F.R. § 413.170(f)(4) as tolling the 180–day period for requesting an exception upon the Intermediary's *receipt* of the request. (R. 378).

That the HCFA always intended to determine the timeliness of an exception request based on the date of receipt is also consistent with administration of 42 U.S.C. § 1395rr(b)(7) which provides, in relevant part, that "[e]ach application for such an exception shall be deemed to be approved unless the Secretary disapproves it by not later than 60 working days after the date the application is filed." For example, determining the timeliness of an exception request pursuant to a "mailbox rule" risks automatic approval of a request which does not otherwise meet any of the exception criteria set forth in 42 C.F.R. § 413.170(g) solely because a claimed delivery service failure resulted in untimely delivery. The Secretary's actual receipt requirement for composite rate exception requests is therefore rationally based.

As to Children's Hospital's assertion that the HCFA demonstrated it knew how to properly amend its policy by revising PRM § 2720.3 on August 23, 1993 to specifically provide for calculation of the 180–day exception period from the first day, the court finds that as such amendment is consistent with the HCFA's established procedure applicable to Children's Hospital's request and did not effectively change any policy of HCFA. Defendants do not rely on the amended PRM in support of their position that Children's Hospital exception request was not timely submitted.

It is undisputed that Children's Hospital had ample prior notice of these administrative interpretations and, in fact had, prior to the instant dispute, filed its exception requests in accordance with them. *See* R. 14. It was well settled, even before *Guernsey,* that such interpretations are entitled to substantial deference, unless inconsistent with prior regulation. *Chevron, supra,* at 842–43, 104 S.Ct. 2778. Here, the Secretary's prior interpretation of the relevant regulations, as evidenced by the PRMs, IPMs and other decisions, consistently required the exception request be physically received by the 180th day counted from the first date of the established period. Children's Hospital had prior knowledge by such requirements, and had actually received specific notice that the receipt date was August 27, 1991, not August 28, 1991 as it contends. (R. 229).

On this record, the court finds, based on the pleadings and as a matter of law, that neither the Secretary's calculation of the 180–day exception window beginning with March 1, 1991 rather than March 2, 1991, nor its interpretation of PRM § 2720.3 that an exception request is considered submitted upon receipt is inconsistent with its prior administration of the ESRD reimbursement program. Nor is either deci-

sion unsupported by precedent and thus an abuse of the Secretary's discretion. The court therefore finds that the Secretary's decision in reversing the PRRB's decision was neither arbitrary, capricious, an abuse of discretion, unlawful, nor unsupported by substantial evidence and, as such, Defendants' request for judgment on the pleadings should be GRANTED and Plaintiff's cross-motion for summary judgment should be DENIED.

## *CONCLUSION*

Based on the foregoing, Defendant's motion for judgment on the pleadings (Docket Item No. 8) should be GRANTED and the case should be DISMISSED; Plaintiff's cross-motion for summary judgment (Docket Item No. 13) should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.