287 F.Supp.2d 191 (2003)
BRAE LOCH MANOR HEALTH CARE FACILITY; Nor Loch Manor Health Care Facility; Elcor Health Services, Inc.; Harding Nursing Home; Maplewood Nursing Home; Nortonian Nursing Home; Palatine Nursing Home; Pontiac Nursing Home; Sunset Nursing Home, Plaintiffs,
v.
Tommy G. THOMPSON, Secretary of the United States Department of Health and Human Services, Defendant.
No. 01-CV-6023L.
United States District Court, W.D. New York.
August 29, 2003.
*192 Jeffrey J. Calabrese, Harter, Secrest and Emery LLP, Rochester, NY, Thomas G. Smith, Harter, Secrest and Emery LLP, Rochester, NY, for Plaintiffs.
Christopher V. Taffe, United States Attorney Office, Rochester, NY, for Defendant.

DECISION AND ORDER
LARIMER, District Judge.
Under the Medicare insurance program, established by Title XVIII of the Social Security Act ("the Act"), the federal government reimburses providers of medical services to the aged and disabled, for the reasonable costs of medical services provided, subject to maximum permissible reimbursement amounts. 42 U.S.C. § 1395f(b)(1); § 1395x(v)(1)(A). Although Congress provided for payment of reasonable costs, the method for determining those costs was left to the Secretary of Health and Human Services ("HHS"). By statute, Congress authorized the Secretary to prescribe methods to be used for determining the reasonable costs of providing services. 42 U.S.C. § 1395x(v)(1)(A). In the Act, Congress provided general guidelines but left the details to the Secretary to establish the appropriate costs necessary for the "efficient delivery of needed health services." Id.
The Secretary of Health and Human Services has promulgated extensive regulations and manuals implementing the Medicare program. The regulations require that the medical provider, in this case, the skilled nursing home, submit cost reports that are audited on behalf of the Secretary and the Administrator of the Health Care Facility Administration ("HCFA") by the providers' fiscal intermediary, in this case, Empire Medicare Services. After that review, the fiscal intermediary issues a Notice of Program Reimbursement ("NPR") to the provider which delineates the amount that the Medicare program will reimburse the provider for services rendered during that fiscal year.
If the provider is dissatisfied with that calculation, there is an appellate procedure culminating in a final appeal to the Administrator of HCFA. The Administrator may also, on his own initiative, review determinations made concerning reimbursement. If still aggrieved, the provider may seek judicial review from the Administrator's final decision, which constitutes the final decision of the Secretary, in United States District Court. 42 U.S.C. § 1395oo(f)(1).
Plaintiffs are nine separate skilled nursing home facilities who provide medical services to aged and disabled patients covered by Medicare. They seek judicial review of the final decision of the Administrator of HCFA, entered November 20, 2000. In that decision, the Administrator rejected both plaintiffs' claims for reimbursement for certain physical therapy services and the methodology for seeking such reimbursement. The Administrator's decision reversed the decision of the Provider Reimbursement Review Board ("PRRB"), the first-level appellate tribunal, that had ruled in favor of plaintiffs.
Plaintiffs contend that the final decision of the Administrator is arbitrary and capricious and contrary to the Act and the rules and regulations promulgated by the Secretary. The matter is before the Court on the parties' cross-motions for judgment on the pleadings.

*193 STANDARDS FOR JUDICIAL REVIEW
The Act (§ 1395oo[f][1]) does provide for judicial review of the final decision of the Secretary. In this case, the final decision was rendered by the Administrator of HCFA. It is important to recognize, though, the appropriate scope of judicial review. Judicial review of these matters is not de novo. Under 42 U.S.C. § 1395oo(f)(1), this Court may review and set aside a final decision of the Secretary pursuant to the Administrative Procedure Act ("APA") if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In its review, the Court must give deference to an agency's decision because the agency has "greater familiarity with the ever-changing facts and circumstances surrounding the subjects regulated." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The Congressional intent expressed in the governing statute must be given full effect if Congress "has explicitly resolved the issue." Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. If that intent is ambiguous or Congress has not spoken on the issue, however, then this Court must respect the Administrator's interpretation of the statute as long as that interpretation is permissible. Id.; Nutritional Health Alliance v. FDA, 318 F.3d 92, 97 (2d Cir. 2003) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)); see also New York & Pub. Serv. Comm'n of N.Y. v. FCC, 267 F.3d 91, 103 (2d Cir.2001) (deferring to the agency's "reasonable interpretation of the statute it administers"); Conn. Hosp. Ass'n v. Weicker, 46 F.3d 211, 219 (2d Cir.1995) (holding that "an agency's interpretation of a statute that the agency administers is entitled to considerable deference and a court may not substitute its own reading unless the agency's interpretation is unreasonable"); Schulte v. Apfel, 2000 WL 362025 at *13 (W.D.N.Y. 2000) (Elfvin, J.) (holding that "[the interpretations made by the Commissioner of Social Security] are afforded substantial deference and will not be disturbed provided they are reasonable and consistent with the statute").
Deference to the interpretation may be especially appropriate where an agency is charged with administering a "`complex and highly technical regulatory program,' in which the identification and classification of relevant `criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); see Rye Psychiatric Hosp. Ctr., Inc. v. Shalala, 52 F.3d 1163, 1168 (2d Cir.1995), cert. denied, 516 U.S. 913, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995) (upholding the Secretary's decision in administering a complex program for hospitals exempt from the Medicare prospective payment scheme); accord In re NextWave Pers. Communications, Inc., 200 F.3d 43, 58 (2d Cir.1999).
Additionally, the Administrator's decision may be challenged if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E) (1989). Substantial evidence has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If the Secretary's findings are supported by substantial evidence, then a reviewing court must give deference to those findings. See Adventist Living Ctr.'s, Inc. v. Bowen, 881 F.2d 1417, 1420-21 (7th Cir.1989) (holding that the factual findings and interpretation of regulations *194 of the Secretary [of HHS] deserve deference unless unsupported by substantial evidence). Furthermore, the Court must not substitute its judgment for that of the Secretary's simply because the Court might have reached a different conclusion from the evidence. Home Health Serv.'s of the United States v. Schweiker, 683 F.2d 353, 356 (11th Cir.1982) (holding that a court does not have the power to substitute its judgment for that of the agency if the agency's findings are supported by substantial evidence); see generally NLRB v. Nev. Consol. Copper Corp., 316 U.S. 105, 106-07, 62 S.Ct. 960, 86 L.Ed. 1305 (holding that "if the findings of the Board are supported by evidence the courts are not free to set them aside even though the Board could have drawn different inferences"); Brooklyn Hosp. v. Schweiker, 596 F.Supp. 326, 329 (E.D.N.Y.1984) (holding that a court "may not substitute its own judgment for that of the Secretary solely because the court might have arrived at a different decision").
The burden of persuasion rests with the providers to establish that they are entitled to reimbursement under the Medicare program. Friedman v. Sec'y of Dept. of HHS, 819 F.2d 42, 45 (2d Cir. 1987) (holding that "a claimant nevertheless has the burden of proving entitlement to Medicare benefits"); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir.1995); see Arruejo v. Thompson, 2001 WL 1563699 at *9 (E.D.N.Y. July 3, 2001); Morton v. Heckler, 586 F.Supp. 110, 111 (W.D.N.Y. 1984) (Elfvin, J.).
The issues in this appeal, and before the Secretary, related to reimbursement for physical therapy provided to residents of the affected nursing homes. Although "physical therapy" may appear to be self-defining, under the complex regulations governing Medicare reimbursement, some types of therapy are covered and reimbursable and some are not. In simplest terms, the decision of the Administrator was that certain items which the providers denominated as physical therapy and reimbursable as an auxiliary cost should not have been classified as such and, therefore, reimbursement for those services was disallowed. Specifically, the Administrator determined that certain therapy services provided by aides did not qualify as "physical therapy" services which are reimbursable under Part B of Medicare.
There are two areas of coverage under Medicare, Part A and Part B. Medicare Part A, is an insurance benefit program available to those 65 and older and the disabled and covers in-patient charges. Medicare Part B provides out-patient coverage to those eligible for benefits under Part A, who pay (or have paid on their behalf) premiums for this type of medical insurance.
In this case, all nine of the plaintiffs are considered "all-inclusive" providers. That is, patients of these facilities pay a flat fee and receive all necessary services. This differs from facilities characterized as "fee-for-service" providers or "charge-based" providers. Those facilities charge a rate for room and board and then charge patients separately for any services utilized, such as pharmacy services, physician services and therapy services. Both types of facilities, though, are entitled to be reimbursed for those services deemed reimbursable under Medicare regardless of whether they are all-inclusive providers or charged-based providers.
Providers are required to identify their costs and categorize them on Medicare worksheets. From these documents, the intermediary conducts its audit and determines the proper reimbursement. Certain charges are listed as "routine" services and, therefore, are listed on the "Routine Cost Center" worksheet. Such services *195 are, by definition, routine and might best be considered part of "room and board" at a skilled nursing facility. These services cover items such as room, food, nursing care, linens, and those items generally made available to all patients. A provider is not entitled to extra reimbursement for services that are deemed to be "routine." Such items are included as part of the basic charge.
The worksheet entitled "Ancillary Cost Center" reflects extra services to a patient which is in addition to what all patients receive. For example, a patient might need speech therapy and the "cost" of providing that would normally be listed in the "Ancillary Cost Center" on the provider's worksheet. The provider is reimbursed based on certain formulas relating to both routine costs and those extra costs denominated as ancillary.
As a practical matter, it is of some significance as to whether a cost is carried as a "routine" cost or an "ancillary" one. That is the principal issue in this appeal. Under the applicable formula, there is a cap on the routine costs that can be reimbursed for each Medicare patient. Therefore, the extent to which the provider actually receives money for services may be limited if the services at issue are characterized as "routine" and listed in the Routine Cost Center. On the other hand, additional compensation or reimbursement is available under a different formula for those items listed under the Ancillary Cost Center. Here, each of the plaintiffs identified a significant number of physical therapy services as "ancillary" and sought reimbursement for them. The Administrator's decision, however, disapproved the request and directed that the services be listed under the Routine Cost Center. In effect, these costs, for the most part, would not be reimbursable since the cap for such routine patient costs had already been reached by the affected nursing homes.
In his decision, the Administrator defined the issues before the Board and the Administrator as follows:
The Board determined that the key issue was whether the therapy cost at issue should be placed in the Routine Cost Center, as advocated by the Intermediary, or in the Ancillary Cost Center as claimed by the Providers. The Board found that the maintenance and routine restorative services at issue should be assigned to the Ancillary Cost Center, rather than Routine Cost Center in accordance with Provider Reimbursement Manual ("PRM") Sections 2203.2, 2220, and the Skilled Nursing Facility Manual ("SNF Manual") Section 230.3(A)(2)(d).
The Administrator's 12-page decision rejected the Board's determination and directed that the costs at issue be attributed to the Routine Cost Center.

Physical Therapy: What is Reimbursable?
The Act does not speak directly to what constitutes physical therapy or other types of medical services, except for the general proviso that they must be "medically reasonable and necessary." 42 U.S.C. § 1395y(a)(1). The details must be left to the Secretary. The regulations promulgated by the Secretary provide several requirements that must be met before physical therapy qualifies as a separately reimbursable item.
The Secretary has promulgated regulations and policy manuals relating to the types of services that are reimbursed. Certain criteria must be met to establish that a service constitutes the type of physical therapy service that is covered and reimbursable. Physical therapy that meets the criteria is covered. Other types of therapy  deemed to be mere "maintenance" *196 therapy, i.e., therapy to maintain a patient's physical condition, is generally not reimbursable as an extra or auxiliary item.
The care, in this case physical therapy, must be ordered by a physician, and require the "skills ... of professional personnel such as ... physical therapists" and the case must be under the supervision of the trained professional. 42 C.F.R. 409.31(a).
The Administrator determined that the services provided to some patients in plaintiffs' facilities failed to meet the requirements necessary to qualify as reimbursable physical therapy. The Administrator determined that the plaintiffs (providers) erred in lumping the costs of all therapy type services  both restorative and maintenance  in the Ancillary Cost Center because they failed to establish that such therapy met the criteria for separate reimbursement as an auxiliary cost. Decision of Administrator, November 20, 2000, pp. 10-11 (Ex. C to Amended Complaint [hereinafter Administrator's Decision]).
The issue before the Court is what constitutes routine services that are provided to all patients as opposed to ancillary charges only incurred by a few. The facility is reimbursed for both but under different formula. Because the routine costs per patient are limited, it is financially beneficial for providers to carry costs as ancillary ones, since the reimbursement formula is more beneficial.
Routine services include "the regular room, dietary and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. 413.53(b). The PRM (Provider Reimbursement Manual) similarly describes routine services at section 2203.1 (Ex. B to Defendant's Memorandum of Law [Dkt. # 31]). The services listed are "always considered routine" regardless of how classified by the facility. They include "room, dietary, medical, social services" as well as "all general nursing services" and all items "finished routinely and relatively uniformly to all patients."
Ancillary charges may include physical therapy if such services meet the applicable criteria. PRM § 2202.8 defines ancillary services in general and provides that services may be categorized in the Ancillary Cost Center if they:
1. Are services directly "identifiable" to an individual patient, and
2. Are services not generally furnished to most patients, and
3. Are services or items that are not reusable by others, or represent a cost for each preparation or services or involve complex medical equipment.
The Secretary treats physical therapy differently depending on the nature of the service and the purpose for it. "Restorative" physical therapy generally qualifies as an ancillary cost and can be reimbursed under that formula if the proper criteria is met. Section 230.3 of the SNF Manual describes the types of physical therapy and the proper allocation for reimbursement purposes.
This manual advises providers that in order for physical therapy to be "covered," several conditions must be met, including:
1. The service must be prescribed by a physician,
2. The service must be consistent with acceptable standards of practice for the "effective treatment of the plaintiff's condition," and
3. The service must be of such a level of "complexity and sophistication" that it can only be performed by a qualified therapist or under his supervision, and

*197 4. There must be an expectation that the condition will improve in a reasonable time, and
5. The "amount, frequency and duration" of the services must be reasonable.
SNF 230.3(A)(2). If these criteria are met, then the services may be charged to the Ancillary Cost Center and are reimbursed accordingly.
The SNF Manual sets forth other caveats. Because physical therapy must be reasonable and necessary, such services are not covered as ancillary costs if the patient will not benefit from the therapy. Section 230.3(A)(2)(a). In other words, if it is determined, either initially or during treatment, that the patient's condition will not improve or will only improve to an "insignificant" degree, then physical therapy will not be considered reasonable and necessary and hence will be disallowed.
In addition, the manual makes it clear that a routine maintenance program utilized to maintain a patient's basic physical functions is not considered covered physical therapy as an ancillary cost item. Section 230.3(A)(2)(b). Such repetitive maintenance services do not require complex procedures or the skill of a trained physical therapist and, therefore, have been determined to be not covered since they are not "reasonable and necessary" for the treatment of the patient.
In spite of this general prohibition, the manual does provide for a circumstance where even routine maintenance-type services can be covered. Section 230.3(A)(2)(d) provides that routine services "which promote over-all fitness and flexibility" can be reimbursed, even if they are not covered as physical therapy for Medicaid purposes, if such services are medically necessary, and prescribed by a physician and if such services are provided by employees of the physical therapy department.
In essence, the Administrator determined in this case that the plaintiff providers failed to establish that the costs at issue met the tests for establishing either a covered physical therapy charge or a routine restorative therapy charge. The Administrator determined that maintenance services are almost always routine costs, and the providers here did not properly distinguish between such maintenance services and routine restorative services, apparently lumping the two types of services together and referenced them interchangeably. In sum, the Administrator found
that the Providers' methodology fails to distinguish between the treatment of routine restorative therapy costs and maintenance costs. The providers incorrectly concluded that the cost of all of the subject services, both routine restorative and maintenance services, should be allocated to the Ancillary Cost Center ....
The Administrator found that the providers failed to identify the costs of routine services and the costs of the maintenance services, especially those performed by therapy aides, which are never property categorized in the Ancillary Cost Center.
Based on my review of the materials submitted, I do not find that the Administrator's decision on the merits to be an arbitrary or capricious one or one not based on substantial evidence. Because the phrase "physical therapy" may denote different things to different people, it is certainly reasonable for the Secretary to establish what constitutes a reimbursable physical therapy procedure. The SNF Manual and the RPM Manual provide guidance to administrators concerning these important matters. Plaintiffs do not quarrel with the regulations or the manuals *198 defining what constitutes physical therapy, but contend that these rules were misapplied here. I disagree.
If the Secretary's findings are supported by substantial evidence, then a reviewing court must give deference to those findings. Furthermore, the Court must not substitute its judgment for that of the Secretary simply because the Court might have reached a different conclusion from the evidence.
Essentially, this case involves a failure of proof. The burden is not on the Secretary, or the financial intermediary, to establish the providers' entitlement to reimbursement. The Administrator determined that, for a variety of reasons, the providers here failed to properly establish justification for reimbursement of certain physical therapy services as an auxiliary charge. Specifically, the Administrator determined that plaintiffs failed to adequately distinguish between maintenance services that are virtually never covered as an ancillary cost from restorative physical therapy services which may be covered if the criteria set forth at SNF Manual 230.3(A)(d) are met.
The Administrator, therefore the Secretary, did not disallow all reimbursement. Rather, some of the charges at issue were allocated not to the Auxiliary Cost Center but to the Routine Cost Center. Because some of the providers had reached the limit for reimbursement of routine costs, there most probably would be a decrease in reimbursement of what would have been the case had the matters been considered as appropriate auxiliary costs. But, that is not a reason to reverse the administrator's decision. In fact, there may have been procedures for the providers to seek exceptions from the cost limitations.
It appears that all visits to the physical therapy department for any service  maintenance or restorative  were lumped together without proper differentiation or demonstration that the services provided met the requirements for covered physical therapy as an auxiliary cost. The Administrator's decision here is based on his interpretation of the promulgated manuals, including the PRM and the SNF Manual. Generally, the agency's interpretation of its own regulations and policy manuals should be given controlling weight unless that interpretation is plainly erroneous. See The Children's Hospital of Buffalo v. Apfel, 110 F.Supp.2d 158, 164 (W.D.N.Y. 2000).
Plaintiffs have failed to convince me that the Secretary's decision, as determined by the Administrator of HCFA improperly interpreted the relevant statute and the regulations and interpretative manuals which discuss and define the physical therapy services that are reimbursable as an auxiliary cost. The Secretary's determination that the providers failed to carry the burden of proving entitlement to reimbursement is not arbitrary or capricious and is supported by evidence (or lack of evidence) in the administrative record.
Although not necessary to the Court's decision, I also agree that the Secretary properly determined that the Provider Reimbursement Review Board lacked jurisdiction to consider the amended cost reports for the 1993 Notices of Program Reimbursement. The Secretary's decision that jurisdiction was lacking because the providers failed to challenge the denial of reimbursement was not an arbitrary or capricious interpretation of the Secretary's regulations concerning appellate review of reimbursement matters.

CONCLUSION
Plaintiffs' motion for judgment on the pleadings (Dkt.# 22) is denied. Defendant's cross-motion for judgment on the *199 pleadings (Dkt.# 31) is granted, and the final decision of the Secretary of Health and Human Services, as reflected in the decision of the Administrator of Health Care Financing Administration, dated November 20, 2000, is affirmed.
IT IS SO ORDERED.